<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EAST COAST SPINE JOINT AND SPORTS MEDICINE, <br><br> Plaintiff, <br><br> v. <br><br> EMPIRE BLUE CROSS BLUE SHIELD, JOHN DOES 1-10, JANE DOES 1-10 AND ABC CORPORATIONS 1-10, <br><br> Defendants. | Case No. 2:22-cv-07561 (BRM) (ESK) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), filed by Defendant Empire HealthChoice Assurance Inc. d/b/a Empire Blue Cross Blue Shield ("Empire"). (ECF No. 12.) Plaintiff East Coast Spine Joint and Sports Medicine ("ECS") filed an Opposition. (ECF No. 21.) Empire filed a Reply. (ECF No. 24.) Thereafter, Empire filed a Notice of Supplemental Authority. (ECF No. 25.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause appearing, Empire's Motion to Dismiss (ECF No. 12) is **GRANTED**.

**I.    BACKGROUND**

For the purpose of the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to ECS. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

1

1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

ECS is a healthcare services company in New Jersey and brings this suit to recover payments for medical services performed on Patient M.S. ("M.S."), who had a plan for medical benefits through Empire. (ECF No. 1-1 (Compl.) ¶¶ 1, 5, 12, 15.) On November 13, 2018, M.S. presented at Pleasantdale Ambulatory Care in West Orange, New Jersey, where James Dwyer, M.D. ("Dr. Dwyer") diagnosed M.S. with a herniated nucleus pulposus at L5-S1 with left lumbar radiculopathy and neurologic deficit. (*Id.* ¶ 13.) Dr. Dwyer is a board-certified orthopedic surgeon, contracted by ECS. (*Id.* ¶ 14.) Dr. Dwyer performed the allegedly pre-authorized and medically necessary services for M.S., including decompressive laminotomy and discectomy at L5-S1 with foraminotomy of the L5 nerve root. (*Id.*) At all relevant times, ECS was an out-of-network provider under M.S.'s Plan. (*Id.* at ¶ 12.)

ECS claims it obtained authorization for the treatment of M.S. from Empire, and provided a reference number of UM3228488, but failed to attach supporting documentation.[1] (*Id.* ¶ 5, 15.)

---

[1] ECS failed to attach the authorization letter from Empire to the Complaint. Empire subsequently attached the letter to the Certification of Shade Oluwasanmi, a Senior Legal Specialist at Empire, responsible for gathering records to assist with litigation. (ECF No. 12-4.) The letter, provided by Empire, includes more details regarding the coverage it offered to M.S. and bears the same reference number included in ECS's Complaint. (*Id.* at Ex. A.) Plaintiff's allegations repeatedly mention the "medically necessary services" that were "pre-authorized" by Empire. (ECF No. 1-1 ¶¶ 13, 15, 16.) To thereafter argue the Court cannot consider the pre-authorization letter because the allegations are not based on the letter, is unconvincing. Indeed, "[ECS] cannot avoid the Court's consideration of the preauthorization letter in assessing the viability of [ECS's] claims by failing to attach it to [the] [C]omplaint or by only referring to it vaguely in [the] [C]omplaint." *Premier Ortho. Assocs. of S. N.J., LLC v. Aetna, Inc.*, No. 20-11641, 2021 WL 2651253, *5 (D.N.J. June 28, 2021). Accordingly, the Court can freely consider this document as it is integral to and is explicitly relied upon in the complaint. *See In re Burlington Coat Factory,* 114 F.3d at 1426; *Shaw*, 82 F.3d at 1220; *Bergen Plastic Surgery v. Aetna Life Ins. Co.*, No. 22-227, 2023 WL 3452633, *3, n.3 (D.N.J. May 15, 2023).

However, the pre-authorization letter provided by Empire stated: "Out-of-network providers and facilities like the ones you're using can charge more. If it's more than your plan covers, you have to pay the difference. This doesn't affect your approval . . . [b]ut your plan covers more of the bill if you stay in network." (ECF No. 12-6.) Thereafter, ECS billed Empire for the primary surgeon charges of $80,041.00. (ECF No. 1-1 ¶ 17.) Empire paid a total of $2,244.70, leaving a balance of $77,796.30. (*Id.* ¶ 19.)

On August 17, 2022, ECS filed a Complaint in the Superior Court of New Jersey, Hudson County. (ECF No. 1-1.) The Complaint alleged three causes of action for Breach of Contract (Count I); Promissory Estoppel (Count II); and Account Stated (Count III). (*Id.*) Generally, ECS alleged:

> While [Empire] was aware that [ECS] was an out-of-network provider, [Empire] never disclosed to [ECS] that it did not intend to pay the fair and reasonable value for said services. To the contrary, by explicitly authorizing the medically necessary services, [Empire] accepted and approved the . . . services provided by [ECS] with the explicit knowledge that [Empire] never intended to pay the amounts they were obligated to pay.

(*Id.* at ¶ 20.) On December 29, 2022, Empire filed a Notice of Removal to the United States District Court for the District of New Jersey. (*See* ECF No. 1.) On February 21, 2023, Empire filed a Motion to Dismiss. (ECF No. 12.) ECS filed an Opposition on April 12, 2023. (ECF No. 21.) On April 26, 2023, ECS filed a Reply. (ECF No. 24.) Thereafter, on May 26, 2023, Empire filed a Notice of Supplemental Authority. (ECF No. 25.)

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 8

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff is required to set forth "a short and plain statement of [his or her] claim showing that [he or she] is entitled to relief." Factual

allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require a plaintiff to provide detailed factual allegations, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Compliance with Rule 8 requires a plaintiff to "give the defendants fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal citation omitted); *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (noting the complaint must "provide the opponent with fair notice of a claim and the grounds on which that claim is based").

A district court may dismiss a complaint *sua sponte* under Rule 8 if the "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Tucker v. Sec'y United States HHS*, 645 F. App'x 136, 137 (3d Cir. 2016) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). Further, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action]," *Binsack v. Lackawana County Prison*, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. *Tillio v. Spiess*, 441 F. App'x 109 (3d Cir. 2011).

### B.  Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555 (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

4

conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed,

after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III. DECISION

Empire argues ECS's Complaint should be dismissed because ECS's claims: (1) are expressly preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*; (2) fail as a matter of law; and (3) fail for lack of standing. (ECF No. 12 at 8–23.) ECS responds that: (1) ECS sufficiently pleaded state law claims to survive dismissal; (2) the claims are not preempted by ERISA; and (3) ESC has standing to sue Empire. (ECF No. 21 at 11–26.) Further, ECS contends the documents submitted by Empire should not be considered by the

Court. (*Id.* at 9–11.) In reply, in addition to its initial arguments in support of the Motion, Empire adds that the Court can consider the documents attached to the Motion; and ECS's claims raised for the first time in its Opposition must be disregarded. (ECF No. 24 at 3–15.)

ECS fails to allege sufficient facts to state any claim set forth in the Complaint. First, to state a claim for breach of contract, a plaintiff must allege: (1) the parties entered into a contract with certain terms; (2) the plaintiff performed under the contract; (3) the defendant breached the contract; and (4) the defendant's breach caused a loss to the plaintiff. *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016); *Coyle v. Englander's*, 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985). A contract must be sufficiently definite, so that "the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (citations omitted). "Where the parties do not agree to one or more essential terms, . . . courts generally hold that the agreement is unenforceable." *Id.* These same principles apply to implied contracts, which vary "only insofar as the parties' agreement and assent thereto have been manifested by conduct instead of words." *Saint Barnabas Med. Ctr. v. Essex Cnty.*, 543 A.2d 34, 39 (N.J. 1988).

ECS's breach of contract claim alleges an "implied-in-fact contract [was] created through [Empire's] course of conduct and interaction with [ECS]" and "[b]y authorizing the surgery, [Empire] agreed to pay the fair and reasonable rates for the medical services provided by [ECS]," which were performed "based upon those terms." (ECF No. 1-1 ¶¶ 22-23.) In the Opposition, ECS contends Empire's assent to pay the fair and reasonable rate for services was "[i]nherent in the authorization . . . thereby creating an implied oral contract." (ECF No. 21 at 13.) However, such allegations are insufficient to establish any clear and definite contract to pay the specific amount sought by ECS. *See Weichert Co. Realtors*, 608 A.2d at 284; *Bergen Plastic Surgery v. Aetna Life*

*Ins. Co.*, No. 22-227, 2023 WL 3452633, *3 (D.N.J. May 15, 2023) ("[C]laiming that the surgeries were 'pre-authorized' and medically necessary, without more, is insufficient to allege that the parties had a contract with certain terms."). Indeed, ECS's Complaint fails to describe the pre-authorization's contents, including the scope and extent of the covered treatment, and instead, claims Empire agreed to pay the fair and reasonable rates for the medical services provided simply "[b]y authorizing the surgery." (ECF No. 1-1 ¶ 23.) This is insufficient "to establish that the parties executed a standalone contract, intended to cover all rendered services," for an amount different than the price Empire was contracted with M.S. to pay. *Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-20483, 2020 WL 5105234, *5 (D.N.J. Aug. 31, 2020). Even without considering the terms of the pre-authorization letter provided by Empire, which further support that Empire did not express an intent to pay a specific sum or rate for M.S.'s services, the Court finds, when looking solely at the face of the Complaint, that ECS has failed to allege sufficient facts to support its breach of contract claim against Empire. *See Premier Ortho. Assocs. of S. N.J., LLC v. Aetna, Inc.*, No. 20-11641, 2021 WL 2651253, *5 (D.N.J. June 28, 2021); *Bergen Plastic Surgery*, 2023 WL 3452633, at *3 ("Plaintiff does not allege any specific, affirmative conduct by Defendant . . . that could lead a reasonable party to believe that . . . the parties reached any mutual agreement on the amount that would be paid.").

ECS's promissory estoppel claim fails for similar reasons. To state a claim for promissory estoppel, a plaintiff must allege: "(1) clear and definite promise; (2) made with the expectations that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (citing *Toll Bros. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008)); *Pitak v. Bell Atl. Network Servs.*, 928 F. Supp. 1354, 1367 (D.N.J. 1996). "Indefinite promises or promises subject to change by the promisor are not

8

'clear and definite' and cannot give rise to a claim for promissory estoppel." *Premier Ortho.*, 2021 WL 2651253, at *3 (citing *Mendez v. Port Auth. of N.Y and N.J.*, No. 14-7543, 2017 WL 1197784, *12 (D.N.J. Mar. 31, 2017).

ECS alleges Empire promised to pay a fair and reasonable rate for M.S.'s medical services by "providing pre-surgery authorization to [ECS]." (Compl. ¶ 29.) In the Opposition, ECS restates this position, explaining: "[Empire], by issuing the authorization and the promise to pay inherent in said authorizations, induced [ECS] to perform the medically necessary procedures." (ECF No. 21 at 14.) ECS's position fails to account for any clear and definite promise by Empire to pay $80,041.00 for the services provided to M.S. Indeed, the Complaint is completely devoid of factual allegations reflecting a clear and definite promise by Empire to pay any fixed or agreed-upon rate of compensation, which is fatal to ECS's promissory estoppel claim. *See Haghighi*, 2020 WL 5105234, at *6; *Bergen Plastic Surgery*, 2023 WL 3452633, at *3 ("Once again, claiming that the surgeries were 'pre-authorized' and medically necessary, without more, is insufficient to allege that . . . [d]efendant had made a 'clear and definite' promise to pay any amount to [p]laintiff."). Like ECS's breach of contract claim, the content of the pre-authorization letter further undermines that Empire conveyed a clear and definite promise to pay the amount alleged. Accordingly, ECS's promissory estoppel claim fails.

To sufficiently state a claim for account stated, "a plaintiff must show the defendant implied a promise to pay based on an admission of indebtedness to the plaintiff." *Maersk Line v. TJM Int'l LLC*, 427 F. Supp. 3d 528, 536 (D.N.J. 2019) (citing *Harris v. Merlino*, 61 A.2d 276, 279 (1948)). Such an admission can be either express or implied through conduct. *Id.*

ECS alleged in the Complaint that "[a]fter providing the medically necessary services, which were authorized by [Empire], [ECS] submitted bills and requests for payment to [ECS]" for

9

$80,041.00, and to date, "[Empire], having acknowledged receipt of the bills, have paid a mere $[2244.70] of the invoices, but have not objected, in any manner, to the billed amounts." (ECF No. 1-1. ¶¶ 34–35.) In the Opposition, ECS explains the "cause of action is based on the fact that [ECS] had an implied agreement with [Empire] wherein [Empire] would [pay] the fair and reasonable value for the services [ECS] provided to [M.S.]" (ECF No. 21 at 15.)

For the same reasons explained above, ECS has failed to demonstrate any "implied agreement" was made between ECS and Empire to pay a certain amount for the services, other than Empire's obligations to pay under M.S.'s Plan. The "mere allegation" that Empire acknowledged receipt of ECS's bills and "paid them in part without 'object[ing] in any manner to the billed amounts' is insufficient to allege an account stated claim without any allegations suggesting that the parties had a debtor-creditor relationship" separate and apart from M.S.'s patient-provider relationship with ECS. *Bergen Plastic Surgery*, 2023 WL 3452633, at *4 (alterations in original). Without such a relationship or clear promise to pay, ECS's account stated claim fails. *See id.*; *Premier Ortho.*, 2021 WL 2651253, at *4.

## IV. CONCLUSION

For the reasons set forth above, Empire's Motion to Dismiss is **GRANTED** and the case is **DISMISSED WITHOUT PREJUDICE**. The matter shall be marked **CLOSED**. ECS may file an amended complaint within twenty-one days, curing the deficiencies identified by the Court in this Opinion. Upon the timely filing of an amended complaint, the matter shall be reopened. Failure to timely file an amended complaint will result in the matter being dismissed with prejudice.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: September 7, 2023

11